## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## AUSTIN DIVISION

| | | |
|---|---|---|
| **TEXAS CROP SCIENCE, INC.** | § | |
| *Plaintiff* | § | |
| | § | |
| *v.* | § | **CASE NO 1:23-CV-00855** |
| | § | |
| **UNIUM BIOSCIENCE LIMITED** | § | |
| *Defendant.* | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT AND JURY DEMAND

PUBLIC VERSION

## TABLE OF CONTENTS

I.    PARTIES ........................................................................................................................ 1

II.   JURISDICTION AND VENUE ...................................................................................... 1

III.  FACTUAL BACKGROUND ........................................................................................... 2

    A.  The Parties' Agreements Regarding Confidentiality and IP Ownership ...................... 4

        1.  The Agreements Provide Extensive Protection for TCS's Materials and
           Confidential Information ....................................................................................... 6

        2.  The Agreements Require Unium to Secure Third-Party Contractor MTAs
           and IP Assignments Prior to Disclosure of TCS Materials and Confidential
           Information ............................................................................................................ 8

    B.  All of the Apyrase Inhibitor Formulations, and Information and Research
       Regarding the Same, Constitute "TCS Confidential Information" and "Materials" .. 10

    C.  Unium Breached the Unium/TCS MTAs by Providing Materials and TCS
       Confidential Information to Third Parties in Violation of the Agreements ............... 11

    D.  Unium Breached the Parties' Agreement by Failing to Timely Disclose and Return
       all TCS Confidential Information and Materials after Termination ......................... 12

    E.  Threats of Imminent Harm .......................................................................................... 15

        1.  Undisclosed Sharing of TCS Confidential Information and Materials with
           Third Parties ......................................................................................................... 16

IV.   PLEADING IN THE ALTERNATIVE ............................................................................ 19

V.    CONDITIONS PRECEDENT ......................................................................................... 19

VI.   CAUSES OF ACTION ................................................................................................... 19

VII.  ATTORNEY'S FEES ..................................................................................................... 20

VIII. JURY DEMAND ............................................................................................................ 20

IX.   PRAYER ......................................................................................................................... 20

1.      Plaintiff Texas Crop Science, Inc. ("TCS") files this complaint against Defendant Unium Bioscience Limited ("Unium") alleging breach of contract.

2.      In addition to damages and attorney's fees and costs, Plaintiff seeks a temporary restraining order and temporary and permanent injunction to prohibit Defendant Unium from using or disclosing Plaintiff's confidential and proprietary information and materials in violation of the parties' contracts and to require Defendant to retrieve and return all of Plaintiff's confidential and proprietary information and materials in accordance with the parties' agreements.

## I.      PARTIES

3.      Plaintiff Texas Crop Science, Inc. is a Delaware corporation, originally organized as a Delaware limited liability company, and since its inception has maintained its principal place of business in Austin, Texas.

4.      Defendant Unium Bioscience Limited is a private limited liability company organized under the laws of England and having its principal place of business at No. 8 Brind Howden ND14 7LA, United Kingdom. In accordance with the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters, Defendant may be served via postal service delivered to its registered office, at The Old Barn Anchorage Lane, Sprotbrough, Doncaster, England, DN5 8DT.

## II.      JURISDICTION AND VENUE

5.      This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(2) because the amount in controversy exceeds $75,000, excluding interest and costs, and the suit is between a Delaware corporation that maintains its principal place of business in Austin, Texas, and a limited liability company organized under the laws of the United Kingdom and maintaining a principal place of business outside of the United States.

6.      This Court has pendent jurisdiction over claims arising under state law pursuant to 28 U.S.C. § 1338(b) and 28 U.S.C. § 1367(a).

7.      ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████████████████████████████████.[1]

8.      Additionally, this Court may exercise specific jurisdiction over Defendant Unium because Unium has sufficient minimum contacts with the forum such that exercise of specific jurisdiction does not offend traditional notions of fair play and substantial justice.

9.      Additionally, venue is proper in this judicial district under 28 U.S.C. § 1391 because a substantial number of the events and omissions giving rise to the claims asserted herein have occurred in this district and Defendant is subject to personal jurisdiction in this district.

### III.      FACTUAL BACKGROUND

10.     Plaintiff TCS is an agricultural research and development company based in Austin, Texas. It was founded by Simon Hiebert in 2012, when Mr. Hiebert was a student at the University of Texas, Austin ("UT") and conducting research on apyrase genes.[2]

11.     In 2012, the research on apyrase genes was still in its nascent stages. Mr. Hiebert formed TCS to take this bioscience to the next level and eventually develop an effective and commercially viable product.

12.     ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

---

[1] ████████████████████████████████████████████

[2] TCS was originally organized as a Delaware limited liability company under the name "CottonGen LLC."

████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████.

13.    For several years, TCS invested substantial sums of money and resources into researching apyrase genes, and inhibitory chemistry thereof. Scientists working for TCS discovered that when applied to agricultural crop pests (including fungi, insects, and weeds), certain molecules could increase the efficacy of commonly utilized agricultural pesticides—including fungicides, insecticides, and herbicides—by inhibiting certain molecular transport and de-toxification systems in target pests for such pesticides ("Apyrase Inhibitors").[3]

14.    In 2019, Defendant Unium and TCS began discussing a potential collaboration.

15.    Defendant Unium also is an agricultural research and development company. It is based out of the United Kingdom but does business in the United States and has a California affiliate, Unium Bioscience LLC.

16.    On information and belief, prior to its collaboration with TCS, Unium had not conducted any research regarding apyrase genes nor had it developed any Apyrase Inhibitors.

17.    Dr. Nigel Grech, then a Unium director, told TCS that in the early 2000s, he had met with a group of UT researchers to discuss the hypothesis that Apyrase Inhibitors might enhance the efficacy of pesticides. Dr. Grech relayed to TCS that Unium had passed on the opportunity to further explore Apyrase Inhibitor technology at that time because the research was still in its early stages.

---

[3] "Apyrase Inhibitors" are defined as "products and formulation thereof based on apyrase inhibitors, including but not limited to, compounds that manipulate the levels of extracellular ATP (e-ATP) and impact the performance of ABC transporters." *See* Ex. 3: Amended Unium/TCS MTA at p. 1 Recital A; Ex. 1: Original Unium/TCS MTA at p. 1 Recital A.

18.    However, by 2019, TCS had substantially advanced research of Apyrase Inhibitors and their efficacy. After dedicating significant financial and personnel resources to the program over multiple years, TCS successfully identified four Apyrase Inhibitor molecules (one of which it subsequently named "TCS 045") as the lead candidates for use in conjunction with a broad set of pesticides.

19.    Unium represented itself to TCS as a sophisticated commercial actor, well-connected in the global agricultural research and development industry. Unium represented that it could assist TCS in developing its Apyrase Inhibitors to create marketable commercial products.

20.    The parties agreed to collaborate to conduct additional research on TCS's proprietary technology (including, but not limited to, TCS 045) with the goal of eventually developing one or more commercially viable products. The parties envisioned a relationship that would develop in phases.

21.    ████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████████████████████████
████████████████████████
████████████████████████████████████████████
██████████████████████████████████

### A.  The Parties' Agreements Regarding Confidentiality and IP Ownership

23.    Before embarking on this collaboration and disclosing its confidential and proprietary information and materials, TCS required Unium to contractually agree, among other things, (1) to strictly maintain the confidentiality of TCS's technology; (2) to restrict access to and use of TCS's

---

[4] *See supra* Note 3 for definition of "Apyrase Inhibitors."

proprietary materials within agreed-upon parameters, and (3) to acknowledge and agree to maintain TCS's exclusive proprietary interest in the same.

24.    The parties entered into various agreements, including the following:

>   (a) The Materials Transfer and Intellectual Property Agreement, dated September 24, 2019 ("Original Unium/TCS MTA");[5]
>
>   (b) The Phase I Development Agreement ("Phase I Agreement");
>
>   (c) The Phase II Development & Commercialization Agreement, dated January 18, 2021 ("Phase II Agreement");[6] and
>
>   (d) The Amended and Restated Materials Transfer and Intellectual Property Agreement dated May 16, 2021 ("Amended Unium/TCS MTA").[7]

25.    There are few differences between the 2019 Original Unium/TCS MTA and 2021 Amended Unium/TCS MTA. They shall be collectively referred to herein as the "Unium/TCS MTAs" and any relevant differences will be noted when appropriate.

26.    The purpose of the Unium/TCS MTAs was to facilitate the sharing of TCS's proprietary "Materials" (as defined in Section 1.3 therein) and other "TCS Confidential Information" (as defined in Section 3.4 therein) with Unium for use in fulfilling the specifically authorized "Research Purpose" (as defined in Section 1.4 therein).[8]

27.    The Unium/TCS MTAs were intended to be performed in conjunction with the Phase I and Phase II Agreements (collectively, the "Development Agreements").[9] ███████████████

---

[5] Ex. 1: Original Unium/TCS MTA.

[6] Ex. 2: Phase II Agreement.

[7] Ex. 3: Amended Unium/TCS MTA.

[8] Ex. 3: Amended Unium/TCS MTA at §§ 1.3, 1.4, 3.4; Ex. 1: Original Unium/TCS MTA §§ 1.3, 1.4, 3.4.

[9] Ex. 3: Amended Unium/TCS MTA at § 10.1; Ex. 1: Original Unium/TCS MTA § 10.1.

████████████████████████████████████████

██████████████████████████████

28.    In the case of any conflict between the Development Agreements and the Unium/TCS MTAs with regard to the use, handling, or disposition of the Materials (as defined in Section 1.3 of the Unium/TCS MTAs), the terms of the Unium/TCS MTAs govern.[11]

### 1. The Agreements Provide Extensive Protection for TCS's Materials and Confidential Information

29.    "Materials" is broadly defined in Section 1.3 of the Unium/TCS MTAs and encompasses both TCS's chemical compounds and formulations thereof, as well as derivatives and related information developed using material or information provided by TCS:

> **"Materials"** means the proprietary synthesized molecules and chemical compounds containing or activating Apyrase Inhibitors, and all technical information relating thereto, that are provided by TCS to Unium, including but not limited to those described in Attachment 1, and any and all constituents and derivatives of such materials, as well as all molecules, compounds, technical information, and any and all constituents and derivatives thereof that are developed, conceived, or produced using materials or information provided to Unium by TCS.[12]

30.    "TCS Confidential Information" is defined in Section 3.4 of the Unium/TCS MTAs as follows:

> all information related to the Materials, the work conducted under this Agreement, all results of the Research Purpose, and any other information that has been labeled or identified as proprietary by TCS. [13]

---

[10] ████████████████████

[11] Ex. 3: Amended Unium/TCS MTA at § 10.1; Ex. 1: Original Unium/TCS MTA § 10.1.

[12] Ex. 3: Amended Unium/TCS MTA at § 1.3; Ex. 1: Original Unium/TCS MTA § 1.3.

[13] Ex. 3: Amended Unium/TCS MTA at § 3.4; Ex. 1: Original Unium/TCS MTA § 3.4.

31.    "Research Purpose" is defined in Section 1.4 of the Unium/TCS MTAs:

> "Research Purpose" means the formulation, evaluation, and testing of the Materials according to the Project Work Plan agreed upon by the Parties as set forth in Attachment 2, which will be updated periodically as outlined in Attachment 2 and may be further modified at any time by mutual consent of the Parties. All costs of conducting the Research Purpose shall be borne by Unium. [14]

32.    Preservation of TCS's proprietary interest in the technology and relatedly, maintaining the confidentiality of and restricting the distribution of the Materials and the TCS Confidential Information, was—and remains—of critical importance to TCS.

33.    In the Unium/TCS MTAs, the parties expressly acknowledged TCS's exclusive ownership of the Materials and the TCS Confidential Information:

> TCS has certain exclusive rights to proprietary materials, namely, exclusive license rights to certain biological materials and intellectual property relating to products and formulations thereof based on apyrase inhibitors, including, but not limited to, compounds that manipulate the levels of extracellular ATP (e-ATP) and impact the performance of ABC transporters ("Apyrase Inhibitors").[15]

> TCS will retain all right, title and interest in and to the Materials and all TCS Confidential Information.[16]

34.    In Section 3.4 of the Unium/TCS MTAs, Unium agreed as follows:

> Unium agrees to maintain the confidentiality of all information related to the Materials, the work conducted under this Agreement, all results of the Research Purpose, and any other information that has been labeled or identified as proprietary by TCS (all of which comprise "TCS Confidential Information"). For the duration of this Agreement, and for three (3) years after the termination or expiration of this Agreement, Unium must not disclose TCS Confidential Information to any third party or use TCS Confidential

---

[14] Ex. 3: Amended Unium/TCS MTA at § 1.4; Ex. 1: Original Unium/TCS MTA § 1.4.

[15] Ex. 3: Amended Unium/TCS MTA at p. 1 Recital A; Ex. 1: Original Unium/TCS MTA at p. 1 Recital A.

[16] Ex. 3: Amended Unium/TCS MTA at § 5.1; Ex. 1: Original Unium/TCS MTA § 5.1.

Information for any reason other than furtherance of the Research Purpose without the prior written consent of TCS.[17]

35.    The Unium/TCS MTAs provided that the "Materials shall only be used strictly for the Research Purposes" and that "Unium must not use, or permit the use of, the Materials for any other purpose than the Research Purpose."[18]

### 2. The Agreements Require Unium to Secure Third-Party Contractor MTAs and IP Assignments Prior to Disclosure of TCS Materials and Confidential Information

36.    The parties contemplated that Unium might engage third parties to assist with the research. With respect to third-party contractors engaged by Unium to provide research services, Section 3.1 of the Unium/TCS MTAs provides as follows:

> Any third party contracted by Unium to perform activities within the Research Purpose shall be required to execute, prior to receipt of Materials or TCS Confidential Information, a written Materials Transfer and Intellectual Property Agreement ("MTA") with terms no less favorable to TCS than this Agreement with respect to the Materials and TCS Confidential Information.[19]

37.    The Amended Unium/TCS MTA adds to the Original Unium/TCS MTA by providing that the MTA should be "in substantially the same form as that attached hereto as Exhibit A" and further that "[e]very transfer of Materials from Unium to any third party recipient must be executed strictly in accordance with the MTA, and each such MTA must be provided to TCS for review and approval at least five (5) business days prior to shipment of Materials to such third party recipient."[20]

---

[17] Ex. 3: Amended Unium/TCS MTA at § 3.4; Ex. 1: Original Unium/TCS MTA § 3.4.

[18] Ex. 3: Amended Unium/TCS MTA at § 3.1; Ex. 1: Original Unium/TCS MTA § 3.1.

[19] Ex. 3: Amended Unium/TCS MTA at § 3.1; Ex. 1: Original Unium/TCS MTA § 3.1.

[20] Ex. 3: Amended Unium/TCS MTA at § 3.1.

38.    In contrast, the Original Unium/TCS MTA provided that "Unium shall provide a copy of all such [MTAs] to TCS within fifteen (15) days of execution." [21]

39.    Section 3.3 of the Amended Unium/TCS MTA further restricts of the transfer of Materials to third parties (and others) by requiring TCS's *prior* written consent:

> No Transfer. Unium must not transfer or provide Materials, the results of the Research Purpose or any portion or derivative of the same to any other organization or individual or to any Unium representative other than Dr. Grech (or any individual designated by him, working under his direction) without the prior written consent of TCS, which consent may be given or withheld at TCS's sole discretion. Unium shall not transfer or provide Materials, the results of the Research Purpose or any portion or derivative of the same to any other organization or individual without the prior written consent of TCS. Notwithstanding the foregoing, Unium may transfer the Materials to those of its third-party contractors in accordance with the restrictions set forth in Section 3.1 for work consistent with the Research Purpose and for no other purpose....[22]

40.    Additionally, Section 5.5 of the Unium/TCS MTAs provides as follows:

> Confidential Information and Inventions Agreements. Unium hereby covenants, warrants and represents that any person involved in the Research Purpose has executed (or prior to any such involvement, must execute) a confidentiality agreement and a written agreement with Unium in which such person assigns to Unium all right, title and interest in and to any inventions, discoveries, or other intellectual property that may result from carrying out the Research Purpose in order that Unium may fully comply with the provisions of this Section 5.[23]

---

[21] Ex. 1: Original Unium/TCS MTA § 3.1.

[22] Ex. 3: Amended Unium/TCS MTA at § 3.3. Section 3.3 of the Original Unium/TCS MTA does not vary in any way that is material to this dispute. *See* Ex. 1: Original Unium/TCS MTA § 3.3.

[23] Ex. 3: Amended Unium/TCS MTA at § 5.5; Ex. 1: Original Unium/TCS MTA § 5.5.

B. **All of the Apyrase Inhibitor Formulations, and Information and Research Regarding the Same, Constitute "TCS Confidential Information" and "Materials"**

41.     On information and belief, prior to TCS's provision of Materials and TCS Confidential Information, Unium had not done any research on Apyrase Inhibitors and had not independently developed any chemical formulations containing Apyrase Inhibitors.

42.     Prior to TCS's provision of Materials and TCS Confidential Information, Unium had no knowledge regarding the formulation or active compounds of TCS 045 (or any other specific Apyrase Inhibitor formulation or compounds that had been provided by TCS), nor the potential or actual efficacy of such chemical compounds and formulations.

43.     Prior to the collaboration with TCS, Unium's knowledge of Apyrase Inhibitors was limited to publicly available materials and did not include any information regarding the efficacy of any particular Apyrase Inhibitor or its effectiveness in combination with pesticides.

44.     In comparison, TCS had expended significant resources in researching and developing its Apyrase Inhibitors and their applications, including but not limited to TCS 045. TCS was the party bringing all of the active chemical compounds and associated intellectual property to the project.

45.     Thus, any Apyrase Inhibitor developed in the parties' course of performance and dealings constitute TCS "Materials" under the Unium/TCS MTAs and all information regarding these formulations constitute "TCS Confidential Information" under the Unium/TCS MTAs. As such, TCS retained all rights, title, and interest in the same.[24]

46.     On information and belief, Unium had not developed any Apyrase Inhibitors prior to its collaboration with TCS.

---

[24] Ex. 3: Amended Unium/TCS MTA at §§ 1.3, 3.4, 5.1; Ex. 1: Original Unium/TCS MTA §§ 1.3, 3.4, 5.1.

### C. Unium Breached the Unium/TCS MTAs by Providing Materials and TCS Confidential Information to Third Parties in Violation of the Agreements

47.     Pursuant to the Unium/TCS MTAs, TCS provided Unium with various Materials (including but not limited to TCS 045), along with other TCS Confidential Information solely for the authorized Research Purpose.

48.     In violation of Section 3.1 and 3.3 of the Unium/TCS MTAs, Unium provided Materials and TCS Confidential Information to third parties without obtaining TCS's prior written consent and without first obtaining the required MTAs from those third parties.[25]

49.     In violation of Section 5.5 of the Unium/TCS MTAs, Unium failed to require third parties to whom it was providing TCS Materials (purportedly for purposes of carrying out the Research Purpose) to execute confidentiality agreements and written agreements assigning to Unium all right, title and interest in and to any inventions, discoveries, or other intellectual property to Unium so that Unium could comply with its obligations to TCS.[26]

50.     Pursuant to Section 3.1 of the Original Unium/TCS MTA, Unium was required to provide copies of all third-party MTAs to Unium within 15 days of execution.[27] The Amended Unium/TCS MTA required that each such MTA must be provided to TCS for review and approval at least five (5) business days prior to shipment of Materials to such third-party recipient."[28]

---

[25] Ex. 3: Amended Unium/TCS MTA at §§ 1.3, 3.3; Ex. 1: Original Unium/TCS MTA §§ 1.3, 3.3.

[26] Ex. 3: Amended Unium/TCS MTA at §5.5; Ex. 1: Original Unium/TCS MTA §5.5.

[27] Ex. 1: Original Unium/TCS MTA § 3.1.

[28] Ex. 3: Amended Unium/TCS MTA at § 3.1.

51.     With the exception of one MTA with HELM AG ("HELM") and a draft agreement with Syngenta Crop Protection AG ("Syngenta") which was to TCS's knowledge never executed,[29] Unium failed to submit any MTAs to TCS for review.

52.     With the exception of the MTA with HELM, Unium failed to provide any third-party MTAs to TCS prior to May 25, 2022, after Unium received a written demand from TCS's counsel.

53.     Multiple third-party MTAs that Unium provided in response to the demand from TCS's counsel predated the Original Unium/TCS MTA by several months.

54.     The MTAs provided by Unium did not contain "terms no less favorable to TCS than [the Unium/TCS MTAs] with respect to the Materials and TCS Confidential Information" and none were in substantially the same form as Exhibit A attached to the Amended Unium/TCS MTA.[30]

55.     Unium failed to disclose to one or more third-party contractors that the Materials being provided to them belonged to TCS.

56.     Unium misled the third parties to believe that the TCS Materials and TCS Confidential Information were Unium's property.

### D.  Unium Breached the Parties' Agreement by Failing to Timely Disclose and Return all TCS Confidential Information and Materials after Termination

57.     On January 18, 2021, Unium and TCS executed the Phase II Agreement and were looking to advance their collaboration to the commercial development phase. █████████████████████ ███████████████████████████████████████████████████████████████████ ███████████████ However, after more than a year of negotiations, in May of 2022, negotiations

---

[29] *See infra* ¶¶ 71 - 76.

[30] Ex. 3: Amended Unium/TCS MTA at § 3.1, Ex. A; Ex. 1: Original Unium/TCS MTA § 3.1.

[31] ███████████████████████████████

broke down. As a result, the parties never finalized or executed the definitive agreements and the joint venture never materialized.

58.    The parties' relationship deteriorated and on June 21, 2022, TCS gave Unium formal written notice of its intent to terminate the Phase II Agreement and the Amended Unium/TCS MTA.[32]

59.    Pursuant to Section 6.2 of the Amended Unium/TCS MTA, termination would be effective 30 days from the date of written notice, i.e., July 21, 2022.[33]

60.    Sections 6.3 and 6.4 of the Amended Unium/TCS MTAs address Unium's obligations regarding the return of Materials and TCS Confidential Information upon termination as follows:

> 6.3    **Disposition of Materials.** Upon the expiration or termination of this Agreement, Unium will return or destroy, at TCS's request, all quantities of Materials and derivatives thereof…in Unium's possession or control, and provide TCS with written certification of the same within thirty (30) days of the effective date of expiration or termination of this Agreement.

> 6.4    **Return of TCS Confidential Information.** Upon the expiration or termination of this Agreement, will return or destroy all TCS Confidential Information in Unium's possession or control, and, at TCS's request, will provide TCS with a written statement that no copies (electronic or otherwise) of any TCS Confidential Information have been retained.[34]

61.    Pursuant to Section 3.1, Unium is responsible for the conduct of any third-party contractors to whom it provided Materials and TCS Confidential Information and with whom it was required

---

[32] Despite being terminated, "[a]ll accrued obligations and claims, including claims or causes of action for breach of [the Unium/TCS MTAs and Sections 3, 4, 5, 6.3-6.5, 7, 8, 9, and applicable provisions of Section 10" survive such termination. Ex. 3: Amended Unium/TCS MTA at § 6.5; Ex. 1: Original Unium/TCS MTA § 6.5.

[33] Ex. 3: Amended Unium/TCS MTA at § 6.2.

[34] Ex. 3: Amended Unium/TCS MTA at §§ 6.3, 6.4.

to procure MTAs with terms comparable to the Unium/TCS MTAs.[35] It is therefore contractually obligated to retrieve any Materials or TCS Confidential Information in the possession of its third-party contractors and is liable for the conduct of the third-party contractors in this regard.





[35] Ex. 3: Amended Unium/TCS MTA at § 3.1.

63.    As noted, to the extent of any conflict, the Amended Unium/TCS MTAs govern the parties' rights and obligations with respect to the Materials. [38]

64.    After sending notice of the termination, TCS made numerous written demands to Unium for the return of all Materials, TCS Confidential Information, and other TCS property and requested that Unium promptly disclose all uses and transfers of TCS Materials, all results of the research, and any inventions. Unium has failed to comply with TCS's demands.

### E.  Threats of Imminent Harm

65.    Unium has threatened to misappropriate TCS Confidential Information and Materials for its own gain in violation of the parties' agreements.

66.    Unium indicated in correspondence that it believes information and materials related to the Apyrase Inhibitors developed in the course of performance and/or dealing _do not_ constitute TCS "Materials" or "Confidential Information" and that Unium has a right to commercial and use such materials or information.

67.    However, as discussed above, Unium had never conducted any research on Apyrase Inhibitors, had developed no chemical compounds constituting or comprising Apyrase Inhibitors, and had no intellectual property related to Apyrase Inhibitors prior to the collaboration with TCS. Unium has no credible claim to any independently developed Apyrase Inhibitors.

68.    In the Unium/TCS MTAs, Unium expressly acknowledged TCS's exclusive rights:

> TCS has certain exclusive rights to proprietary materials, namely, exclusive license rights to certain biological materials and intellectual property relating to products and formulations thereof based on apyrase inhibitors, including, but not limited to, compounds that manipulate the levels of extracellular ATP (e-ATP)

---

[38] Ex. 3: Amended Unium/TCS MTA § 10.1.

and impact the performance of ABC transporters ("Apyrase Inhibitors").[39]

TCS will retain all right, title, and interest in and to the Materials and all TCS Confidential Information.[40]

69.     Furthermore, the definitions of "Materials" and "TCS Confidential Information" are deliberately broad and encompass not only materials and information provided by TCS, but "any and all constituents and derivatives of such materials, as well as all molecules, compounds, technical information, and any and all constituents and derivatives thereof that are developed, conceived, or produced using materials or information provided to Unium by TCS."[41]

70.     Given the broad definition of "Materials" as including all constituents and derivatives, Unium can have no credible claim to having ownership interest in any formulations containing TCS 045 or any other compounds originating from TCS.

### 1.  Undisclosed Sharing of TCS Confidential Information and Materials with Third Parties

71.     TCS has attempted to contact third parties to whom it believes Materials and TCS Confidential Information were provided in violation of the Unium/TCS MTAs, advising them of the agreements between Unium and TCS and demanding the return of the TCS Confidential Information and Materials. Responses have been sparse.

72.     However, Syngenta, a large agriculture biotech firm, expressly acknowledged receiving TCS Materials and TCS Confidential Information from Unium and purported to have received them pursuant to an MTA with Unium dated July 21, 2022—the effective date of termination of the Amended Unium/TCS MTA —which has never been provided to TCS.

---

[39] Ex. 3: Amended Unium/TCS MTA at p. 1 Recital A; Ex. 1: Original Unium/TCS MTA at p. 1 Recital A.

[40] Ex. 3: Amended Unium/TCS MTA at § 5.1; Ex. 1: Original Unium/TCS MTA § 5.1.

[41] Ex. 3: Amended Unium/TCS MTA at § 1.3; Ex. 1: Original Unium/TCS MTA § 1.3.

73.     In March and April of 2021, Unium and Syngenta had been discussing the possibility of certain research to be conducted on TCS Materials. A draft MTA was circulated at that time, but to TCS's knowledge, that MTA was never executed. Thus, TCS understood that Syngenta was not going conduct the research and that no TCS Confidential Information or Materials would be provided to Syngenta.

74.     However, in an email dated April 3, 2023, in response to TCS's inquiries, Syngenta acknowledged receipt of Materials and TCS Confidential Information from Unium, pursuant to a previously undisclosed July 21, 2022 MTA:

> Dear Mr. Hiebert,
>
> Today, I have received your letter to confirm destruction of materials and confidential information received under our MTA, effective July 21, 2022.
>
> We are asking our colleagues to destroy all confidential information and materials and will revert back to you after complete investigation.
>
> Could you please confirm receipt of this e-mail and your acceptance of this approach?
>
> Best regards,
>
> Sarah
>
> Sarah Leuenberger

75.     When TCS requested a copy of the June 2022 MTA, Syngenta refused to provide it, citing its confidentiality obligations to Unium:

> Dear Mr. Hiebert,
>
> Many thanks for your e-mail. We are bound by confidentiality and cannot provide any contractual details. Please request these directly from Unium who will seek SYN's approval for sharing the details.
>
> Best regards,
>
> Sarah

76.    Unium never disclosed the existence of any executed MTA with Syngenta and has never provided a copy. TCS has not received any further communications from Syngenta regarding the status of the Materials and TCS Confidential Information.

77.    In addition to the wrongful retention of Materials and TCS Confidential Information provided by Unium to Syngenta, TCS has cause to believe that Unium intends to unlawfully misappropriate TCS's intellectual property and wrongfully exploit it with HELM, another large agricultural biotech firm based in Europe.

78.    During the course of performance of the parties' contracts, the parties had been working with HELM and had contemplated establishing a business relationship with HELM. When Unium and TCS could not come to terms regarding the joint venture, Unium implicitly threatened the viability of a deal with HELM, telling TCS that there would not be any deal with HELM if Unium was not in the picture.

79.    HELM has recently acquired an interest in Unium and has undisclosed agreements with Unium. A news release posted on HELM's website advised:

### HELM AG partners with Unium Bioscience Ltd.

. . .

> [Unium and HELM] have agreed on a long-term partnership as of June 2022, following HELM's strategy to become a leading global player in innovative crop solutions.
>
> The distribution agreement is a result of an existing collaboration in product development and will enable HELM to distribute selected products in dedicated markets.[42]

80.    On information and belief, Unium intends to unlawfully commercialize TCS's intellectual property for its own gain in violation of the parties' agreements.

---

[42] HELM, *HELM AG partners with Unium Bioscience Ltd*, https://www.helmag.com/news-exhibitions/news/detail/helm-ag-partners-with-unium-bioscience-ltd

## IV.    PLEADING IN THE ALTERNATIVE

81.    If and to the extent of any conflict, the facts and causes of action set forth herein are plead in the alternative.

## V.    CONDITIONS PRECEDENT

82.    All conditions precedent to Plaintiff's right of recovery for the preliminary injunctive relief have been satisfied, waived, or excuses.

## VI.    CAUSES OF ACTION

## COUNT 1:    BREACH OF CONTRACT

83.    Plaintiff and Defendant entered into valid and enforceable contracts, i.e., the Unium/TCS MTAs and the Phase II Agreement.

84.    Plaintiff performed, tendered performance of, or was excused from performing its contractual obligations.

85.    Defendant has materially breached the parties' contracts by:

(a)  providing Materials and TCS Confidential Information to third parties without Plaintiff's consent in violation of Section 3.1, 3.3, and 3.4 of the Unium/TCS MTAs;

(b)  failing to procure MTAs with third parties prior to delivering Materials as required by the Section 3.1 and 3.3 of the Unium/TCS MTAs;

(c)  failing to procure confidentiality agreements and assignments from third party contractors in violation of Section 5.5 of the Unium/TCS MTAs;

(d)  misappropriating Materials and the TCS Confidential Information in violation of Sections 5.1 and 5.6;

(e)  using Materials in a manner that exceeds the scope of the authorized Research Purpose in violation of Sections 3.1 and 5.6 of the Unium/TCS MTAs;

(f)  failing to provide research reports and complete written disclosures of inventions as required by Sections 4.2 and 5.2 of the Unium/TCS MTAs;

(g)  failing to cooperate with Plaintiff in sustaining and enforcing Plaintiff's ownership rights in the Materials and TCS Confidential Information in violation of Section 5.4 of the Unium/TCS MTAs; and

(h) refusing to return the TCS Confidential Information and Materials and derivatives thereof to TCS in violation of Section 6.3 and 6.4 of the Unium/TCS MTAs and ███████████████████████████████████████

86.    Plaintiff has suffered injury as result of Defendant's breaches. Plaintiff seeks all actual, special, and consequential damages and attorney's fees and costs. [43]

87.    Pursuant to Section 3.5 of the Unium/TCS MTAs, Plaintiff is entitled to seek and hereby does seek preliminary and permanent injunctive relief. [44] Plaintiff requests that upon issuance of a temporary restraining order and preliminary injunction, the Court abate this matter to permit the parties to proceed with mediation in accordance with the parties' agreements.

## VII.  ATTORNEY'S FEES

88.    Plaintiff seeks attorney's fees and costs. *See* Tex. Civ. Prac. & Rem. Code §§ 38.001, *et seq*; *see also See* Ex. 3: Am. Unium/TCS MTA at § 3.5.

## VIII.  JURY DEMAND

89.    Plaintiff hereby demands a trial by jury on all claims, issues and damages so triable.

## IX.  PRAYER

90.    Plaintiff TCS respectfully requests that Defendant be ordered to appear and answer herein and that the Court award Plaintiff the following relief:

(a) A temporary restraining order and temporary and permanent injunctions to prohibit Unium, along with its officers, agents, servants, employees, and attorneys, and all other persons who are in active concert and participation with it, from using or disclosing Plaintiff's confidential and proprietary information and materials in violation of the parties' contracts and statutory law;

(b) All actual, consequential, and special damages;

(c) Pre- and post-judgment interest;

---

[43] Ex. 3: Amended Unium/TCS MTA at § 3.5; Ex. 1: Original Unium/TCS MTA § 3.5.

[44] Ex. 3: Amended Unium/TCS MTA at § 3.5; Ex. 1: Original Unium/TCS MTA § 3.5.

(d) Court costs;

(e) Attorney's fees; and

(f) All other relief to which the Plaintiff may show itself justly entitled.

Dated: July 24, 2023                    Respectfully submitted,

                                        **DUNHAM LLP**

                                        919 Congress Avenue
                                        Suite 910
                                        Austin, Texas 78701
                                        512.615.1255 (phone)
                                        512.612.1256 (facsimile)


                                        By: /s/ I. Antongiorgi
                                            David E. Dunham
                                            State Bar No. 06227700
                                            Email: david@dunhamllp.com
                                            Isabelle M. Antongiorgi
                                            State Bar No. 24059386
                                            Email: isabelle@dunhamllp.com
                                        **ATTORNEYS FOR PLAINTIFF**